UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE DOMINGUEZ VALDEZ,<br><br>        Petitioner,<br><br>    v.<br><br>W. L. MUNIZ,<br><br>        Respondent. | Case No. 1:17-cv-00304-AWI-JDP<br><br>FINDINGS AND RECOMMENDATIONS TO DENY SECOND AMENDED PETITION FOR A WRIT OF HABEAS CORPUS AND TO DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS<br><br>ECF No. 24 |

Petitioner Joe Dominguez Valdez, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 24. Petitioner claims legal violations arising from the trial court's failure to suppress a wiretap order, from a gang-related sentencing enhancement, from concurrent sentencing, and from the allegedly ineffective assistance of counsel. *Id*. For the reasons stated below, we recommend that the court deny the petition.

**I.    Background**

Petitioner pleaded no contest to twenty-six criminal counts, including two counts of attempted murder and conspiracy to commit murder. He was sentenced to a total determinate term of eighteen years and four months in state prison, and a total indeterminate term of seventy-

1

five years to life. He raised several claims on direct review, and several more in three rounds of state habeas petitions.

We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal. A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> **Warrant for Wiretap**
>
> The facts are derived from the preliminary hearing. California Department of Justice Special Agent Ryan Pontecorvo, a sworn peace officer for the State of California, worked under a narcotics team with the Bureau of Narcotic Enforcement. In May 2010, Pontecorvo was involved with a federal wiretap out of Delano. Pontecorvo was monitoring Jose Velez, the regimental commander of the Nuestra Familia in Delano.
>
> **Conspiracy to Murder, Attempted Murder, Shooting at Inhabited Dwelling, Counts 1-4**
>
> Pontecorvo intercepted a call between Velez and Felipe Ramirez, the Nuestra Familia regimental commander in Visalia. During the phone call the two regimental commanders described the mistaken killing of "a guy" who implicated Jonas Martinez. Pontecorvo contacted the Visalia Police Department and confirmed there was a murder there the day before, on May 19, 2010. This led Pontecorvo to seek a new wiretap on Martinez.
>
> Martinez was in charge of running security crews for the Visalia regiment. Defendant was in charge of day-to-day activities for the crew. Defendant passed out guns and drugs. He also made sure the gang received "all the taxes" from members. Pontecorvo obtained a warrant for defendant's phone, the second target phone.
>
> Pontecorvo verified he was wiretapping defendant's phone by observing him talk to Martinez during an intercepted call. Pontecorvo obtained a warrant to wiretap Felix Ruiz, another member of the Nuestra Familia. Defendant changed his phone, causing Pontecorvo to obtain wiretaps on four phones belonging to defendant.
>
> A call from defendant to Felix Ruiz intercepted 30 minutes after a shooting took place on July 27 was played for the court. Defendant was heard in the call planning a retaliatory act by having gang members walk up and shoot the victims on foot rather than doing so from a car. Defendant was also heard on the call planning a diversion prior to shooting the rival Asian gang members. Several more conversations were intercepted that evening. Defendant called off the retaliatory shooting that evening because there were too many "cops in the area."
>
> On July 28 there were a series of phone calls. Defendant wanted

2

shots fired in another part of town as a distraction. More distraction shots were fired, but the area where defendant wanted the shooting was "still hot." Defendant told a gang member that he would pick up a gun from Carlos Mojica and if they could not confirm a shooting, defendant would light an M-80, a quarter stick of dynamite, by a store. Defendant finally got confirmation there were a number of gang members in the hot spot.

A call was intercepted from defendant telling a gang member he was going to have someone fire off a 30-30, a high-powered rifle. At 12:05 a.m. on July 29 a call was made to defendant stating "the homies just blacked," slang for someone was shot. The caller told defendant one person was down but still breathing. Defendant wanted results as well as confirmation. Defendant learned from a participant in the shooting that two Asian gang members had been shot, a 50-year-old and a 17-year-old. A pejorative word was used in lieu of Asian.

Luma Fahoum, a violent crimes detective with the Visalia Police Department, testified that on July 27, a mother of Hispanic children who were playing football in the street with neighborhood kids saw two Asians and one Hispanic approach her children on bicycles. The ones on bicycles said "Southside OT's" and gunfire erupted, striking the mother's vehicle in front of her home. On July 28, a double shooting of two victims of Asian descent occurred nearby. One of the victims was 60 years old. Fahoum later realized the two incidents were related.

**Conspiracy to Sell Narcotics, Street Terrorism, Counts 5-7**

On June 1, a series of calls were intercepted in which defendant and other gang members arranged for the sale of narcotics. Agents observed defendant meet with others in a parking lot. Investigators believed defendant was involved in a conspiracy to sell methamphetamine, possessed it for sale, and the sale was for the benefit of a criminal gang.

**Conspiracy to Commit Street Terrorism and Assault with a Firearm, Counts 8-9**

On June 1, a call was intercepted between defendant and Martinez in which defendant said some Southsider gang members "were tripping on him" and he was "not strapping," meaning he was not carrying a gun. Defendant told Martinez they "were throwing their flag," meaning they were displaying their colors. Defendant asked Martinez to go into defendant's house and retrieve a ".38" from under the television cabinet and bullets from behind the television. Martinez was observed going into defendant's house.

**Conspiracy to Sell Marijuana and Commit Street Terrorism, Counts 10-15**

On June 18, a call was intercepted in which defendant discussed selling his "granddaddy," or a particular marijuana plant, to Mike Beauchamp for $250. Defendant was in his residence. There was a

3

surveillance camera directed at defendant's house from across the street. Beauchamp was seen arriving at defendant' house. Beauchamp retrieved a large cardboard box he had in the rear seat of his car and walked into defendant's residence. He returned to his car 10 minutes later and placed the large cardboard box back into the rear passenger seat of his car. Investigators could not see the contents of the box.

On July 16, investigators conducted surveillance of defendant's residence after defendant was heard on intercepted calls saying he was making a narcotics sale. Defendant drove to a Valero station in Goshen where he met others. Defendant talked to someone while at the open trunk of a car where they were seen manipulating a grocery bag. Defendant then got back into his own car. In another intercepted phone call, defendant made a deal for the sale of methamphetamine and later dropped it off at another house.

**Conspiracy to Sell Marijuana and Commit Street Terrorism, Counts 16-20**

On July 18, investigators intercepted phone calls in which defendant discussed with Rolando Najera, known as Rolly, the sale of 28 grams of marijuana. Defendant told Najera to get a gun because there were some Southsiders by his house. Agents saw a car drive up to defendant's house. A person walked into the house and later left. During intercepted phone conversations, Najera indicated he was at defendant's house to pick up the 28 grams. Najera left defendant's home in his car and was stopped by the police. Najera called defendant and told him the marijuana had been seized. They talked about exchanging a 30-30 rifle to pay for the seized drugs.

**Receiving Stolen Property and Street Terrorism, Counts 21-22**

On July 19, investigators intercepted a phone call in which defendant was asked to house a stolen vehicle. Defendant was looking for a storage spot for the vehicle and sent associates to retrieve it. The vehicle was in the possession of an informant. Defendant told the informant to bring the vehicle to his house. Investigators directed the informant to leave it in a public parking lot. The informant told defendant he got stopped by the police en route.

**Conspiracy to Sell Marijuana and Street Terrorism, Counts 23-26**

On July 23, investigators intercepted phone calls in which defendant discussed the sale of marijuana plants to Tony G. A surveillance team saw a car towing a trailer drive up to defendant's residence the next day and load plants into the trailer. Detective Nathan Flaws of the Visalia Police Department testified as a gang expert. Flaws explained that defendant's conduct was consistent with possession of marijuana for sale for the benefit of a criminal street gang. The parties stipulated at the preliminary hearing that there were criminal street gang predicate crimes.

ECF No. 33-1 at 3-6.

The following procedural facts—once again, as stated by the California Court of Appeal—also inform our analysis:

> On November 7, 2012, the trial court denied defendant's motion to suppress the wiretap evidence. Defendant's renewed suppression motion was denied on December 3, 2012. On August 16, 2013, four days after the beginning of a jury trial, defendant pled no contest to 26 counts including two attempted homicides, conspiracy to commit murder, conspiracy to participate in a criminal street gang, and narcotics offenses. He also admitted enhancements for participation in a criminal street gang, gun use, and for serving a prior prison term.
>
> The trial court sentenced defendant on September 16, 2013, to a determinate sentence of 18 years 4 months. This included a consecutive term of one year eight months on the gang enhancement alleged on count 8 (§ 186.22, subd. (b)(1)(B)). Several counts and enhancements were stayed pursuant to section 654. The court sentenced defendant to an indeterminate sentence of 25 years to life on count 1, conspiracy to murder K.S. and D.S. (§§ 182, subd. (a)(1), 187, subd. (a)). Defendant was sentenced to additional consecutive sentences of 25 years to life for the use of a gun by a principal that caused the great bodily injury of each victim (§ 12022.53, subds. (d), (e)(1)). Defendant's total indeterminate sentence is 75 years to life. The court's indeterminate sentences on three other counts were stayed pursuant to section 654.

*Id*. at 2-3.

## II. Discussion

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims, *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018), although the standard that governs our review depends on the nature of the petitioner's claims and whether the state court adjudicated petitioner's claims on the merits. In general, however, § 2254 requires deference to the state-court system that determined the petitioner's conviction and sentence.

If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id*. at 103 (citation omitted). Our habeas review authority serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*. at 102-03 (emphasis added).

Because petitioner raises a variety of claims in an equally large variety of postures, we consider the specific standard of review on a claim-by-claim basis.

### A. Motion to Suppress

Petitioner first requests habeas relief on the grounds that the "trial court erred in failing to suppress the wiretap order." ECF No. 24 at 4. But such an error would be insufficient to grant habeas relief, because when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). In deciding whether the rule of *Stone* applies, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996); *see also Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015) (holding that *Stone v. Powell* applies post-AEDPA). There is no question here that petitioner had the opportunity for full and fair litigation of the relevant Fourth Amendment claim—and, indeed, attempted to suppress the relevant evidence multiple times. *See* ECF No. 33-1 at 2 (summarizing petitioner's attempts to suppress the evidence before trial); Cal. Penal Code § 1538.5(a)(1) (providing California criminal defendants with the ability to move for the suppression of unconstitutionally obtained evidence). Indeed, petitioner does not contend otherwise, and instead disputes the correctness of the trial court's decision. *See* ECF No. 24 at 5-10. Because petitioner had the opportunity for a full and fair litigation of the Fourth Amendment claim, his first basis for requesting habeas relief must fail.

**B.     Gang Enhancement**

Petitioner next requests habeas relief on the ground that the "trial court imposed an illegal sentence . . . by imposing . . . a serious felony gang enhancement for a crime that was not a serious felony." ECF No. 24 at 4.

This claim fails for two reasons. First, the claim is unexhausted. Section 2254(b)(1)(A) of Title 28 requires that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," or that such a process was unavailable or ineffective. While petitioner's sentencing claim was presented to and rejected by the California Court of Appeal on direct appeal, *see* ECF No. 33-1 at 14, he failed to raise this claim in the state Supreme Court, *see* Lodged Doc. No. 5 (petition filed in the California Supreme Court).

Second, it is perfectly clear that the claim is not cognizable. *See* 28 U.S.C § 2254(b)(2) (allowing federal courts to deny an unexhausted habeas petition on the merits); *see also Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) ("[A] federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim."). Petitioner claims that the state trial court erred on a question of state law: the definition of a "serious felony" for the purposes of imposing a gang enhancement. But state-law sentencing issues of this sort do not typically present a cognizable question on federal habeas review. *See, e.g.*, *Beaty v. Stewart*, 303 F.3d 975, 986 (9th Cir. 2002) ("[S]tate claims are not cognizable in federal habeas proceedings."). A state court's misapplication of its own sentencing laws justifies federal habeas relief only when the misapplication was so fundamentally unfair as to violate a federal constitutional right. *See Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). Here, however, petitioner has not shown any such unfairness, and we find none: the California Court of Appeal's lengthy and reasoned discussion of petitioner's sentencing, *see* ECF No. 33-1 at 14-15, indicates that the sentencing enhancement was a far cry from fundamentally unfair. The trial court reasonably concluded that conspiracy to commit assault with a deadly weapon on behalf of a gang constituted a "serious felony" for the purposes of a gang enhancement. *See* ECF

No, 33-1 at 15. Petitioner has failed to show that this conclusion is, for example, "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Richmond v. Lewis*, 506 U.S. 40, 50 (1992).

### C. Concurrent Sentencing

Petitioner next claims that the trial court erred by sentencing him "to concurrent sentences for active participation in a criminal street gang" on "counts seven, nine, twelve, fifteen, twenty, twenty-two and twenty six." ECF No. 24 at 5. But petitioner prevailed on this issue with respect to the same counts (and one more) in the California Court of Appeal. *See* ECF No. 33-1 at 15-17; *id*. at 17 ("Defendant's concurrent sentences on counts 7, 9, 12, 15, 19, 20, 22, and 26 are hereby stayed pursuant to section 654."). Because petitioner can obtain no additional relief, the claim is moot, and we have no jurisdiction to consider it.[1] *See Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir.1999) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."); *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir.1999) ("If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction.").

### D. Assistance of Counsel

Finally, petitioner claims that both his trial and appellate counsel were constitutionally ineffective in violation of his Sixth and Fourteenth Amendment rights. ECF No. 24 at 5. In particular, petitioner claims that his trial counsel was deficient in objecting to the wiretap evidence and in failing to present a related defense, and that his appellate counsel failed to raise the ineffective assistance of his trial counsel.

The two-step inquiry from *Strickland v. Washington* guides our analysis of petitioner's three counsel-related claims. *See* 466 U.S. 668 (1984). To succeed on an ineffective assistance of counsel claim, *Strickland* requires that a petitioner first show some deficiency in performance so serious that counsel's performance "fell below an objective standard of reasonableness." *Id* at

---

[1] Even if this claim were not moot, it would be unexhausted, since petitioner did not pursue the claim before the California Supreme Court. *See* Lodged Doc. No. 5.

8

687-88.  Second, the petitioner must show that the deficient performance caused him prejudice; this requires "showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial." *Id*.  To succeed at this second step, the petitioner must show that a reasonable probability exists that the outcome of the trial would have been different, but for counsel's errors.  *See Harrington v. Richter*, 562 U.S. 86, 104 (2011).

### 1. Failure to object

Petitioner's first claim—that his trial counsel was deficient in objecting to the wiretap evidence—was raised in his state collateral proceeding and rejected on the merits by the California Superior Court; it was also rejected by the California Supreme Court.[2]  *See* Lodged Doc. No. 8.  When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of 28 U.S.C. § 2254(d), which precludes a federal court from granting habeas relief unless the state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts.  *See Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018).  When coupled with *Strickland*, the relevant question under § 2254(d) is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105.  That is, if there is even one reasonable argument that counsel did not violate the *Strickland* standard—even if the state court has not identified that argument—the petitioner cannot obtain habeas relief.  *See id*. at 106.  Petitioner must also show a substantial likelihood that the results of his trial would have been different, but for the ineffective assistance of counsel.  *See id.*

Petitioner does not meet this standard.  He alleges that his lawyer "did not directly raise the issue of the illegal application [for the wiretap] made by the district attorney."  ECF No. 24 at 5.  In fact, petitioner's trial counsel did raise the issue.  *See* ECF No. 33-1 at 7 (noting that petitioner contested an alleged failure to authorize the wiretap application before trial).  Petitioner

---

[2] The California Supreme Court denied this claim without comment, *see* Lodged Doc. Nos. 11 and 12, so we look through to the last state court that issued a reasoned opinion on petitioner's habeas claims.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  In this case, that is the superior court.

9

may wish that his attorney had made certain arguments more forcefully or been successful in suppressing the evidence, but counsel was diligent in litigating the wiretap issue. *See id*. at 10 ("Defendant brought his suppression motion four times prior to his conviction."). The Superior Court found that petitioner failed to establish even a "prima facie basis for relief" under *Strickland*, *see* Lodged Doc No. 8 at 3. Given counsel's diligence, this was not contrary to, or an unreasonable application of, the *Strickland* standard.

### 2. Failure to present a defense

Petitioner's second counsel-related claim—that his state-court trial counsel was ineffective for failing to present a defense based on an e-mail from petitioner's federal counsel alleging that the wiretap affidavits contained misrepresentations[3]—was summarily denied as repetitive in the California state courts. *See* ECF No. 33 at 30 (summarizing this procedural history); *see* ECF No. 24 at 5 (summarizing petitioner's claim). We thus consider the merits of this claim de novo under the *Strickland* standard. *See Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("De novo review, rather than AEDPA's deferential standard, is applicable to a claim that the state court did not reach on the merits.").[4]

Petitioner's claim fails under *Strickland*, because his state trial counsel did not engage in any objectively unreasonable behavior with respect to this issue. Petitioner's federal counsel states in a letter that there was a mistake or misrepresentation in an affidavit supporting the relevant wiretap applicant. *See* Lodged Doc. No. 17, exhibit B. According to federal counsel, the affidavit quoted one gang member saying to another (about a crime) "and tell your homies not to *do* shit about it," when in fact what was said was "and tell these homies not to *say* shit about it." *Id*. The allegation is that the latter statement would fail to support a wiretap application, since it would suggest that nothing more would be *said* about the crime over the phone. *Id*. Petitioner's federal counsel also claims in the same letter that he spoke with petitioner's state trial counsel about the alleged error. *Id*.

---

[3] The record suggests that petitioner was also charged with related federal crimes.
[4] The state makes no argument that petitioner has defaulted on this claim "pursuant to an independent and adequate state procedural rule" that would bar federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

10

But, even assuming that the allegations in the letter are true, petitioner's state-trial counsel did not behave unreasonably after being informed of the potential discrepancy. Instead, counsel filed a discovery request—ultimately denied—for the relevant affidavit. *See* CT 1:126. In his declaration in support of this request, state counsel stated that he had met with the federal counsel, who "believed that law enforcement personnel who prepared the Affidavit in support of the warrant failed to include relevant information" that could or would have justified denial of the wiretap request. *Id*. at 129-30. Being informed of potential evidence and then attempting to obtain it is conduct that "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

### 3. Failure to raise ineffective assistance of counsel on appeal

Finally, petitioner claims that his appellate counsel was ineffective by not raising the ineffectiveness of his trial counsel on appeal. ECF No. 24 at 5. Because, as discussed above, trial counsel's representation was not objectively deficient, appellate counsel's failure to raise this issue was not objectively unreasonable. *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) ("[E]very weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court . . . . Appellate counsel will therefore frequently remain above an objective standard of competence . . . because she declined to raise a weak issue.").

## III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to

deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, petitioner has not made a substantial showing of the denial of a constitutional right.  Thus, we recommend that the court not issue a certificate of appealability.

**IV.     Findings and Recommendations**

The court should deny the amended petition for a writ of habeas corpus, ECF No. 24, and decline to issue a certificate of appealability.  These findings and recommendations are submitted to the U.S. District Court judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days of the service of the findings and recommendations, petitioner may file written objections to the findings and recommendations with the court and serve a copy on all parties.  That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:    February 28, 2020                                             
                                                        UNITED STATES MAGISTRATE JUDGE

No. 205.